SMITH BROTHERS, et al. *v.* DEPENDENTS OF CLEVELAND

No. 41665        February 6, 1961        126 So. 2d 519

*Young, Daniel & Coker, Fred Lotterhos, Jr.,* Jackson, for appellants.

*Wroten, Orlansky & Miller,* Greenville; *J. Wesley Miller,* Rolling Fork, for appellees.

LEE, P. J.

Willie Mae Cleveland and others, the widow and dependent children of Bob Cleveland, filed their claim against Smith Brothers, a partnership, and its insurer, to recover all benefits afforded under the Workmen's Compensation Law by reason of the death of their husband and father. The attorney-referee, after hearing the evidence, was of the opinion that the accidental injury and death occurred without the course and scope of the decedent's employment. The Commission, by a two to one vote, affirmed the finding of the attorney-referee. The circuit court, on appeal, reversed the order of the Commission, and awarded all benefits to which the claimants appeared to be entitled, but did not actually determine and fix the same. From that judgment, Smith Brothers and its insurer appealed.

Bob Cleveland, a Negro man, at the time of his death was about thirty-nine years of age. He was married, and,

in addition to his wife, had at least three dependent children. His pay check aggregated about $90 for a two-week period. He had worked for Smith Brothers about ten years, and was a faithful employee. He was a truck driver and performed his duties in the general area of Eagle Lake. The logs were transported to a point on the Yazoo River where they were unloaded on ramps and, after being loaded onto barges, were delivered to the mills. The employees were transported by Smith Brothers in their vehicles from Vicksburg and its environs, where they lived, to and from their place of work.

During the afternoon of Monday, January 12, 1959, Bob was performing his usual duties. He had delivered his second load of logs to the ramp when his actions attracted the attention of Rex Ingram, his boss. At first, Ingram thought that Bob was sick. Upon further observation, he became convinced that Bob was drunk. Actually Bob admitted that he had taken ''a little drink.'' Ingram thereupon told Bob to ''drive your truck up to the shop truck and park it, and I'm going to have to lay you off for the rest of the day * * * you can ride back into town with me—just pull over by the shop truck * * * and whatever you do, don't touch that big six by six truck that is already parked there * * * you are laid off for the rest of the day.'' R. M. Brandon, the log scaler, was present and gave corroboration that Bob was under the influence of liquor and of Ingram's purpose to lay him off after compliance with his order. The ''six by six'' truck, which was loaded with logs secured by chains and binders, had broken down on the preceding Saturday, and was parked near the shop truck.

Ingram testified that Bob ''wasn't too drunk'' to drive it. He said that Bob then ''pulled the truck out in the middle of the road and started up to the shop truck''; that he obtained a piece of paper from Brandon, who was standing nearby, and began to write to Letrice Smith about this incident. When he had written the words, ''Letrice Bob is drunk. When he came to take

the tire off he was at the ramp'', he heard the logs falling off of the ''six by six'' truck. He also said that ''he (Bob) may have been gone only two or three minutes from the time he left until the logs fell off.'' He, Brandon, and also Mr. and Mrs. Floyd Johnson, went to the scene of the accident. The ''six by six'' truck was headed east, and the truck, which Bob had been driving, was parked in front of it on the edge of the road. Bob ''was right by the side of the truck where the logs rolled off'', and he died while they were getting the logs off of him. Two binders and a chain were in the tool box behind the cab of the ''six by six'' truck. The other chain was under the log and was either on Bob or in his hand. Bob's jacket was found in the truck which he had been driving.

Ingram testified that the binders and the chains were still in place when he went down to the ramp, but he did not fix the time when he made this observation.

The appellants, in their brief, contend that the deceased, contrary to his instructions, stopped at the loaded truck, got out of his own truck, went to the far side of the loaded truck, and was unloading it when he was killed by the falling logs. Consequently they say that the deceased, while drunk, in violation of orders, undertook to unload the ''six by six'' truck, and that his intoxication was the sole, proximate cause of his death.

It is true that under Section 6998-04, Code of 1942, Recompiled ''* * * no compensation shall be payable if the intoxication of the employee was the proximate cause of the injury * * *'' Evidently Bob was intoxicated.

■■ But, in U. S. Fidelity & Guaranty Company v. Collins, 231 Miss. 319, 95 So. 2d 456, it was said that ''intoxication is an affirmative defense with the burden of proof upon the employer pleading it.'' This principle was documented with 1 Larson, Workmen's Compensation Law (1952), Sections 34-34.34; 58 Am. Jur., Workmen's Compensation, Sections 207, 439.

According to Ingram, the last time he saw the ''six by six'' truck, there were two chains around the logs

and two binders secured the chains. But no one testified that this condition existed immediately before the accident. No one saw Bob unloading the logs. There was no evidence that anyone heard the rattling of the binders or chains as they were being removed by Bob, if in fact he did so. Ingram and Brandon were only one hundred to one hundred and fifty yards away. It seems reasonable that, being so close by, they would have heard a drunken Negro trying to get the binders and chains off, if this had in fact happened. Ingram, by two measures, fixed the time that elapsed between Bob's starting up the truck and the falling of the logs: (1) He said that he was only able to write the seventeen short words, which are quoted above; and (2) Bob "may have been gone only two or three minutes from the time he left until the logs fell off."

It is pure conjecture that the decedent, after driving his truck one hundred to one hundred fifty yards and parking it, in violation of orders, noiselessly and without rattling or clanking the binders and chains, removed the two binders and one chain and put them in the tool box behind the cab, and then, in an effort to remove the other chain and unload the logs, when such had never been done at that place before, toppled the logs upon him and crushed himself to death. It is incredible that he drove the distance here shown and did the things above-mentioned within such a brief period of time. It is strange indeed that Ingram manifested such solicitation for the safety of the decedent, if the logs, in fact, were secured by the two chains and binders. It is much more reasonable that unsecured logs fell upon the decedent as he was passing the loaded truck on his return to the ramp, where he left Ingram, to end his work for the day. At any rate, the evidence for the appellants was insufficient to prove that Bob Cleveland's intoxication was the proximate cause of his death.

It is clear that the appellants did not meet the required burden of proof; and that the learned circuit judge was correct in reversing the order of the Commission and in awarding the benefits to which the claimants are entitled.

The judgment of the circuit court is therefore affirmed, and the cause is remanded to the Commission to determine and fix the amounts of the several benefits and their duration.

Affirmed and remanded to the Commission.

*McGehee, C.J.,* and *Kyle, Gillespie* and *Rodgers, JJ.,* concur.